TROUTMAN SANDERS LLP
Dan E. Chambers (State Bar 156853)
Meghan C. Sherrill (State Bar 259487)
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone: 949.622.2700
Facsimile: 949.622.2739
dan.chambers@troutmansanders.com
meghan.sherrill@troutmansanders.com

Attorneys for Creditor
California Bank & Trust as Assignee to the FDIC as
Receiver for Vineyard Bank, N.A.

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

In Re

David Kahn,

Debtor.

CALIFORNIA BANK & TRUST, a California corporation, as Assignee of the Federal Deposit Insurance Corporation as Receiver for Vineyard Bank, N.A.,

Plaintiff,

v.

DAVID JEFFERY KAHN, individually and as trustee of the DAVID J. KAHN TRUST AGREEMENT DATED OCTOBER 1, 1990,

Defendants.

Case No. 10-12306-PB7

Chapter 7

Adversary No. 10-90636-PB7

**PLAINTIFF CALIFORNIA BANK & TRUST'S OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO FRBP 9011**

Date: May 5, 2011
Time: 2:00 p.m.
Dept.: 4
Judge: Hon. Peter W. Bowie

Plaintiff California Bank & Trust as assignee of the FDIC as receiver for Vineyard Bank, N.A. ("the Bank") hereby submits this Opposition to the Motion of defendant David Kahn ("Defendant") for Sanctions under Bankruptcy Rule 9011:

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## I. INTRODUCTION

Defendant's Motion seeks sanctions against plaintiff California Bank & Trust ("Bank") and its counsel for allegedly filing a meritless lawsuit. When you pull back the layers of this Motion and the Defendant's conduct over the course of this bankruptcy, it becomes clear that Defendant is seeking to intimidate anyone willing to take the time to examine its assets and pre-petition transfers. Defendant first attempted to avoid this adversary by assuring counsel for the Bank and counsel for another creditor that the Defendant would agree to an extension of the deadline to object to discharge, but subsequently suing for a declaration that such a complaint was time-barred due to the expiration of that same deadline. When that did not work, Defendant threatened the Bank with a sanctions motion for filing its complaint objecting to discharge, making a host of unfounded and unscrupulous accusations.

The Bank is still not willing to back down, however, as it is confident that its claims are valid and have both legal and factual merit. The Bank's counsel conducted a more than reasonable inquiry into the facts before filing the Complaint and has listed below and in its declaration the many sources of information that were exhausted in determining whether or not to file the claims alleged in the Complaint. The Defendant has absolutely no evidence that the Complaint was field for an improper purpose. Instead, he points to a strange collaboration of facts that he claims show the Bank's improper motives, namely that it **did not** seek sanctions against Defendant for its meritless lawsuit, but instead chose to answer it on the date designated by the Court as the answer deadline.

Because the Complaint contains claims that, based upon a reasonable inquiry, can be shown to have both a legal basis and factual basis, supported by evidence, and because the Complaint was not filed for an improper purpose, Defendant's Motion should be denied.

## II. BACKGROUND

### A. The Guaranty Obligation

On or about August 10, 2006, Plaintiff's predecessor in interest, Vineyard Bank, N.A. ("Vineyard") entered into a loan agreement with Tres Hombres, LLC ("Borrower") by which Vineyard agreed to loan Borrower, and Borrower agreed to repay, the principal sum of

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

$5,222,000.00 ("Loan Agreement"). (Complaint, ¶¶ 5-6.) In connection with the Loan, Defendant executed a written guaranty of payment, by which Defendant agreed to repay the Loan should Borrower fail to do so. (Complaint, ¶¶ 12-13.) Timothy Karl Sears ("Mr. Sears") also executed a written guaranty of payment, agreeing to repay the Loan should Borrower fail to do so. (Complaint, ¶ 13.) Beginning on or about November 10, 2008, Borrower defaulted on the Loan by failing to make the payments when due and subsequently failing to pay all outstanding principal and interest when the Loan matured. (Complaint, ¶ 15.)

**B. The Adversary Complaint by Defendant**

On July 13, 2010, Defendant filed for chapter 7 bankruptcy protection ("Petition Date"). The original deadline to file a complaint objecting to Defendant's discharge was October 12, 2010. Knowing that it would investigate and possibly file such a complaint, in mid-September 2010, counsel for the Bank contacted counsel for Defendant and asked him if he would stipulate to an extension of the deadline to file a complaint objecting to discharge. (Declaration of Meghan Sherrill ("Sherrill Decl."), ¶ 2.) Defendant's counsel readily agreed and even offered to draft the stipulation himself. (Sherrill Decl., ¶ 3.) On September 16, 2010, Defendant's counsel forwarded the discussed stipulation to counsel for the Bank, who signed the stipulation and returned it to Defendant's counsel the same day. (Sherrill Decl., ¶ 3.) Counsel for Defendant then filed the stipulation, but neither party uploaded an order granting the stipulation. (Sherrill Decl., ¶ 4.)

On October 15, 2010, three days after the deadline to file a complaint objecting to discharge was originally set to expire, Defendant filed an adversary complaint against the Bank and another creditor, with whom Defendant had also entered into a stipulation extending the same deadline, seeking a declaration from the Court that any complaint objecting to discharge under 11 U.S.C. §§ 523(c) and 727(a) is time barred. (Request for Judicial Notice ("RJN"), Exhibit A.) Defendant stated in the Complaint that while he had agreed to draft and execute a stipulation with the Bank, Defendant never stated that it would upload an order granting the same. (*Id.* at ¶¶ 10, 19.) The Bank was understandably surprised at Defendants' underhanded attempt to prevent filing of a dischargeablility complaint, but immediately thereafter uploaded an order granting the stipulation, which the Court entered on October 21, 2010. (RJN, Exhibit B; Sherrill Decl., ¶ 6.)

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

By that order, the deadline to file a complaint objecting to discharge was extended to November 5, 2010.

On or about October 29, 2010, counsel for the Bank again contacted counsel for Defendant and negotiated a stipulation further extending the date to file a complaint objecting to discharge. (Sherrill Decl., ¶ 7.) On October 29, 2010, the Bank filed the agreed upon stipulation extending the deadline to December 31, 2010, and on November 5, 2010, the Court entered an order granting that stipulation. (RJN, Exh. C.)

On November 12, 2010, hoping to avoid the need to answer Defendant's complaint, counsel for the Bank advised counsel for Defendant that now that the Court had signed two orders, extending the deadline to file a complaint objecting to discharge to December 31, 2010, Defendant's complaint was moot and should be dismissed. (Sherrill Decl., ¶ 8.) This email, and Defendant's counsel's response, is attached to the Sherrill Declaration as Exhibit A.

On November 15, 2010, the date indicated on the summons issued by the Court as the Bank's deadline to respond to Defendants' complaint, to be sure its rights were preserved, the Bank answered Defendants' complaint. (RJN, Exh. D; Sherrill Decl., ¶ 9.) On December 2, 2010, the parties entered into a stipulation to dismiss the adversary and the next day, the Court entered an order dismissing Defendant's adversary action. (RJN, Exh. E.)

**C. <u>The Bank's Investigation of Dischargeability of Defendant</u>**

The Bank first began investigation of the pre-petition acts of Defendant after reviewing its schedules filed on the Petition Date. In or about mid-2006, Defendant, among others, provided Vineyard with personally prepared financial information ("Financial Statement"), purportedly detailing all of Defendant's assets and liabilities, in order to induce Vineyard to make the Loan to Borrower. Counsel's review of this Financial Statement revealed that at that time, Defendant represented that he owned six real properties which had a combined estimated value of $69,500,000. (Sherrill Decl., ¶ 10.) The fact that four years later Defendant indicated in his Schedule A that he owns no real property at all raised a red flag and counsel for the Bank began considering filing a complaint objecting to discharge. (Sherrill Decl., ¶ 11.) Counsel also reviewed financial statements for Defendant obtained from the Bank which were dated July 2007

and January 2008, which revealed that at those times, Defendant purported to own significant real property assets. (Sherrill Decl., ¶ 12.)

Examination of Defendant's Statement of Financial Affairs also reveals a number of suspicious transactions to relatives of Defendant in the months leading up to the Petition Date. (RJN, Exh. F.) Defendant made periodic payments to his sister throughout 2009 and 2010 for amounts he allegedly owed. Defendant also made cash gifts to his sister-in-law, niece and mother. These transfers, coupled with what Bank's counsel later learned from public records searches and conversations with other counsel, contributed to counsel's decision to pursue a section 727(a)(2) claim. (Sherrill Decl., ¶ 13.)

On September 1, 2010, Mr. Sears, a co-guarantor with Defendant on the Loan from Vineyard, filed for Chapter 11 bankruptcy protection in the Southern District of California, case no. 10-15781-MM11 ("Sears Bankruptcy Case"). (Sherrill Decl., ¶ 14.) On October 1, 2010, counsel for the Bank spoke with counsel for Mr. Sears, Elliot Stone of Nowland Stone LLP. (Sherrill Decl., ¶ 15.) In this telephone conversation, Mr. Stone informed the Bank's counsel that his client had information regarding substantial transfers of assets by Defendant shortly before the Petition Date, but that Mr. Sears would not willingly provide the details of this information without an agreement from the Bank that it would not object to any chapter 11 plan proposed in the Sears Bankruptcy Case. (Sherrill Decl., ¶ 15.) The Bank was not prepared to enter into such an agreement at that time, and decided that if nothing else, it would get the details of said information during discovery in the instant action. (Sherrill Decl., ¶ 16.) Counsel for the Bank called Mr. Stone one more time in December of 2010, just before filing the adversary complaint, to confirm that Mr. Sears was still willing to provide information regarding what was characterized as Defendant's fraudulent transfers. (Sherrill Decl., ¶ 17.) Mr. Stone again confirmed that Mr. Sears had such information and was willing to provide if the Bank agreed not to object to Mr. Sears' plan. (Sherrill Decl., ¶ 17.)

In December of 2010, counsel for the Bank conducted a series of public records searches to determine if there were any further grounds to file a non-dischargeability complaint. (Sherrill Decl., ¶ 18.) Most notable was a Property Profile obtained from Fidelity National Title showing

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

that Defendant sold a $1.5 million property on or about August 31, 2009, less than a year before the Petition Date. (Sherrill Decl., ¶19.) Despite this large sale, Debtor reports on his Schedule B to have only $50 cash on hand and $50 in a checking account. (RJN, Exh. F.)

The December 2010 records search also revealed that an entity by the name of Sunset View Properties LLC owns a property located at 5550 Warbler Way, La Jolla, CA, estimated to be worth approximately $2.9 million, and that it has owned it since June of 2006. (Sherrill Decl., ¶ 20.) In the Financial Statement provided around the same date, Defendant represented that piece of property as his asset. (Sherrill Decl., ¶ 10.) That property is listed as an asset for Defendant, admittedly through what appears to be an interest in Sunset View Properties LLC, in the July 2007 and January 2008 financial statements reviewed by counsel as well. (Sherrill Decl., ¶ 11.) That real property, however, is not listed on Defendant's Schedule A and neither is any value for an interest in Sunset View Properties LLC listed in Defendant's Schedule B. (RJN, Exhibit F.)

### D. <u>The Bank's Complaint Objecting to Defendant's Discharge</u>

After conducting an extensive investigations and reviewing all the above-listed discoveries, counsel for the Bank made the decision to file a complaint on behalf of the Bank on December 31, 2010, alleging claims under 523(a) and 727(a). (Sherrill Decl., ¶ 21.) Because counsel for the Bank believed that further investigation may reveal even more suspicious transfers on the part of Defendant, it drafted the complaint in broad language, so as to leave room for discovery of any further facts to support its claims. (Sherrill Decl., ¶ 22.) Unfortunately, this led the Court to grant Defendant's Motion to Dismiss the Complaint, but the Bank was allowed leave to amend its Complaint. (Sherrill Decl., ¶ 22.) The Bank intends to amend its pleading to include the specifics of the aforementioned facts, which were discovered through investigation before the filing of the initial complaint but through error of counsel, were not specifically pleaded. (Sherrill Decl., ¶ 23.)

## III. <u>LEGAL STANDARD</u>

Federal Rule of Bankruptcy Procedure 9011 states that:

> By presenting to the Court…a pleading…an attorney or unrepresented

> party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances –
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. . .

"The current version of the Rule requires only that an attorney conduct 'an inquiry reasonable under the circumstances' into whether 'factual contentions have evidentiary support.' *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1330 (2d Cir. 1995) ("an attorney is entitled to rely on his or her client's statements as to factual claims when those statements are objectively reasonable"). "The question we ask is whether the lawyer's certification complies with an objective standard of reasonableness under the circumstances." *FDIC v. Calhoun*, 34 F.3d 1291, 1296 (5th Cir. 1994). "With frivolousness, the key question is whether a pleading states an arguable claim." *Stewart v. American International Oil & Gas Co.*, 845 F.2d 196, 201 (9th Cir. 1988).

"In imposing rule 11 sanctions, the court is to avoid hindsight and resolve all doubts in favor of the signer….Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986).

## IV. THE CLAIMS IN THE COMPLAINT ARE WARRANTED BY EXISTING LAW

The claims in the Complaint are clearly supported by existing law. Specific bankruptcy code sections exist in order to give creditors the exact relief that is being sought by the Bank and for the exact same reasons. Section 523(a)(2) specifically provides that a debtor will not be discharged from a debt obtained by use of a statement in writing that is materially false. The Bank has identified above numerous facts that while admittedly do not by themselves establish liability, led counsel to a reasonable belief that Defendant may have provided materially false financial information to the Bank. Either that, or Defendant has omitted material information

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

from its schedules and/or has hidden significant assets from the estate.

Section 727(a) provides specific grounds upon which the Court can find that the debtor is not entitled to a discharge. In the Complaint, the Bank indentified specifically two of those enumerated grounds, namely, that Defendant transferred property with intent to hinder, delay or defraud a creditor within one year prior to the Petition Date and that Defendant has failed to explain satisfactorily any loss of assets or deficiency of assets to meet his liabilities. The Bank has evidence of a specific real property sale, which, from the date stamp at the bottom of the website printout, can objectively be determined was obtained prior to the filing of the Complaint. (Sherrill Decl., ¶¶ 18-20.) Moreover, the Bank and its counsel were confronted with a variety of other evidence regarding transfers by Defendant and a huge deficiency of assets between the January 2008 financial statement and the Defendant's Schedules. (Sherrill Decl., ¶¶ 10-20.) All of these facts combined form a more than reasonable basis for the two 727 claims in the Complaint.

## V. THE ALLEGATIONS HAVE EVIDENTIARY SUPPORT

As demonstrated by the Declaration of Meghan Sherrill filed concurrently herewith, counsel for the Bank conducted an extensive inquiry into the affairs of the Defendant before filing its Complaint on December 31, 2010. It did a thorough search and analysis of public records, including property profiles obtained from Fidelity National Title Company and a Comprehensive Accurint Report through LexisNexis.[1] (Sherrill Decl., ¶¶ 18-20.) It spoke with counsel for individuals who had prior financial and personal dealings with Defendant. (Sherrill Decl., ¶¶ 15-17.) It examined the Bank's files and the Debtors Schedules and Statement of Financial Affairs. (Sherrill Decl., ¶¶ 10-13.) Counsel obtained more than enough information to provide grounds for the claims asserted in the Complaint, and has a reasonable belief that even more will be uncovered through discovery in this action.

## VI. THE COMPLAINT WAS NOT FILED FOR AN IMPROPER PURPOSE

In the Motion, Defendant makes unsubstantiated and unwarranted claims against counsel

[1] Due to the sensitive personal and financial information contained in the Accurint Report from LexisNexis, including partial social security numbers, the Report is not attached to the Sherrill Declaration. Counsel for the Bank will, however, bring a copy of the report to the hearing on this Motion should the Court wish to review it.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

for the Bank on grounds that simply make no sense. First, Defendant alleges that the Bank and its counsel only filed this dischargeability complaint in order to "get back at" Defendant for filing a lawsuit against the Bank. As an initial matter, this makes no sense, as the Bank was clearly anticipating pursuing claims objecting to discharge prior to the filing of Defendant's adversary, or it would not have bothered contact Defendant's counsel to obtain a stipulation extending the deadline. Moreover, counsel for the Bank had its conversation with counsel for Sears on October 1, 2010, two weeks before Defendant filed an adversary against the Bank, and was told in no uncertain terms that there was substantial evidence to be had that Defendant attempted to hide assets from the bankruptcy estate. Lastly, Plaintiff has not one scintilla of evidence supporting its claims that the Bank had improper motives in filing its Complaint.

Defendant points to an email from Bank's counsel to its own counsel regarding the adversary filed by Defendant in October. While the adversary was, at best, tenuous from inception, and at worst, unethical, it clearly lost any merit when the Court signed the Orders extending the deadline to object to discharge to December 31, 2010. There was nothing inappropriate about counsel's email to Defendant's counsel. And now, Defendant goes so far as to complain about the fact that the Bank did not seek sanctions against it and claim that this is evidence of improper motives. Lastly, Defendant points to the fact that the Bank filed an answer to Defendant's complaint as evidence that the Bank has improper motives against Defendant. The summons issued by the bankruptcy court clearly ordered that the Bank answer the Complaint by November 15, and understandably cautious of the need to protects its rights against an adversary that is willing to file a complaint for failure to upload an order for a stipulation it filed, the Bank answered by that date.

Neither the Bank, nor its counsel, filed the Complaint for any improper purpose. Rather, the Bank seeks only to ensure (i) that the Loan was not obtained by any fraudulent means, (ii) that if assets exist to pay the more than $1.5 million dollars it is admittedly owed, such assets are used to pay the debt, and (iii) that if assets were dissipated fraudulently, Defendant's debt is not discharged. (Sherrill Decl. ¶ 24.)

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## VII. CONCLUSION

For all these reasons, the Bank respectfully requests that the Court deny Defendant's Motion for Sanctions pursuant to Rule 9011. In addition, the Bank requests that it be awarded its reasonable attorney's fees incurred in defending against this Motion.

Dated: April 18, 2011

TROUTMAN SANDERS LLP

By: /s/ Meghan C. Sherrill
Dan E. Chambers
Meghan C. Sherrill
Attorneys for Creditor California Bank & Trust as Assignee to the FDIC as Receiver for Vineyard Bank, N.A.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545