Bernard M. Hansen, Esq. (Cal. Bar No. 115751)
3465 Camino Del Rio South, Suite 250
San Diego, CA  92108-3905
(619) 283-3371
Facsimile (619) 282-8900
bernardmhansen@sbcglobal.net

Attorney for Defendant, David Kahn

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>DAVID KAHN<br><br>          Debtor.<br><br>Case No. 10-12306-PB7 | ADVERSARY PROCEEDING<br>NO. 10-90636-PB7<br><br>REPLY IN SUPPORT OF MOTION BY<br>DAVID KAHN FOR SANCTIONS<br>UNDER BANKRUPTCY RULE 9011 |
| CALIFORNIA  BANK  &  TRUST,  a<br>California corporation, as Assignee of the<br>Federal  Deposit  Insurance  Corporation  as<br>Receiver for Vineyard Bank, N.A.<br><br>         Plaintiff,<br>vs.<br><br>DAVID KAHN<br><br><br>   Defendant. | DATE: May 5, 2011<br>TIME: 2:00 a.m.<br>DEPT.: Four<br><br>HONORABLE PETER W. BOWIE |

1

# I
## INTRODUCTION

The Plaintiff's Opposition is based on a legal foundation that does not exist.

The gravamen of Plaintiff's argument is that it conducted a reasonable inquiry.  Based on this assertion the Plaintiff suggests:

(a)    If the Plaintiff made a proper inquiry before filing its complaint, it did not need to allege any factual contentions; and

(b)    If the Plaintiff made a proper inquiry before filing its complaint, it could plead any legal contention it desired, even if the Plaintiff does not allege factual contentions.

Both of these foundational propositions are inaccurate.  If there are no factual contentions, "reasonable inquiry" is not needed.  A court cannot conduct a "reasonable inquiry" of a factual contention that is not asserted in the Complaint.  The corollary is that it is impossible to plead a claim for relief within the confines of Bankruptcy Rule 9011(b)(2) without pleading factual allegations.  A legal contention is never warranted, if there are no factual allegations.

This Court is not required to speculate what Plaintiff was thinking when it executed its complaint.  This Court is not required to speculate what Plaintiff was thinking when it chose not to heed the warning of Mr. Kahn's Rule 9011 motion, but instead, to press forward with the litigation of Mr. Kahn's motion to dismiss.

The one item Mr. Kahn, the Plaintiff and this Court can agree on is: "The Bank intends to amend its pleading to include the specifics of the aforementioned facts … but through error of counsel, were not specifically pleaded."  Opposition, at p. 6, ll. 22 - 24.  (Emphasis added.)  Mr. Kahn admonished the Plaintiff time and again.  The Plaintiff steadfastly refused to take any notice.  A belated, half-hearted mea culpa is not sufficient.  Sanctions under Rule 9011will need do to.

///

II
LEGAL ARGUMENT

A.    There Are No Factual Contentions.  As a Matter of Law, the Complaint Violates Bankruptcy Rule 9011(b)(2) and (3).

Plaintiff spends substantial time trying to explain to the Court why its unreasonable inquiry was reasonable.  Plaintiff misses the point.  For purposes of Bankruptcy Rule 9011(b)(2) and (3), it does not matter how much time an attorney spends investigating, if he or she does not plead any factual allegations.

The proper analysis is twofold.  First, a court must identify the factual and legal contentions in the Complaint.  Second, a court considers whether the factual and legal contentions are formed after a reasonable inquiry.  If there are no factual allegations in the first instance, there is no need to weigh whether there was a reasonable inquiry by Plaintiff's counsel.  If a claim for relief has no supporting factual allegations, it always violates Bankruptcy Rule 9011.   A  legal  contention  is never warranted, if there are no factual allegations.

While he may well be able to do so, Mr. Kahn does not need to prove all three of Plaintiff's claims for relief violate Bankruptcy Rule 9011.  "We have held that 'the mere existence of one nonfrivolous  claim'  in  a  complaint  does  not  immunize  it  from  Rule  sanctions." *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005)

B.    Plaintiff Failed to Make a Reasonably Inquiry.

1.    Explanation of No Evidence Objection.

Mr. Kahn  does  not  object  to  the  hearsay  evidence  attached  to  Ms. Sherrill's declaration.    Mr. Kahn  understands  these  documents  are  proffered  for  the  purpose  of demonstrating Ms. Sherrill's state of mind.  To the extent they are being offered to prove the truth

of the matter asserted, Mr. Kahn objects on the basis of hearsay, lack of authentication and lack of personal knowledge.

    2. <u>Plaintiff Failed to Make a Reasonable Inquiry of the 11 U.S.C. §523(a)(2)(B) Claim for Relief.</u>

    To state a claim under 11 U.S.C. §523(a)(2)(B), the Plaintiff must properly allege "(B) use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition…"

    Plaintiff states it reviewed Mr. Kahn's financial statements.   Plaintiff informs the Court that Mr. Kahn listed 6 real properties with a combined estimated value of $69,500,000. Opposition, at p. 4, ll. 24-25.

    Despite years of financial statements, Plaintiff can only locate one ostensible irregularity. At p. 8, ll. 4-10 of its Opposition, the Plaintiff states:

    The December 2010 records search also revealed that an entity by the name of Sunset View Properties LLC owns a property located at 5550 Warbler Way … In the Financial Statement provided around the same date, Defendant represented that piece of property as his asset.  (Sherrill Decl. ¶ 10.)  That property is listed as an asset for Defendant, admittedly through what appears to be an interest in Sunset View Properties LLC, in the July 2007 and January 2008 financial statements.

    Plaintiff argues that Mr. Kahn listed an asset (his residence) in his 2006 Financial Statement that he did not own, but was owned by Sunset View Properties LLC.  The Plaintiff knows this was not materially false.  First, the 2006 Financial Statement (at least that part which the Plaintiff attaches) is substantially written on the bank form (Ex. B to Sherrill Dec.).  Mr. Kahn's 2007 and 2008 Financial Statements (Ex. C to Sherrill Dec.) clearly show Mr. Kahn's format.  At the top of the 2007 and 2008 Financial Statements, each specifically states it is "consolidated".  Under "REAL ESTATE", Mr. Kahn lists all real properties, the entity that owns

the real property and if he owns less than 100% of the entity, then the percent he owns of the entity.

If Mr. Kahn owned 100% of Sunset View Properties LLC, the listing of his residence at his property is not materially false.  The only relevant issue in this regard is whether in 2006, when he completed the 2006 Financial Statement, Mr. Kahn owned 100% of Sunset View Properties LLC.  What did the Plaintiff do to determine this issue before suing Mr. Kahn to determine $1.4 million is nondischargeable?  Nothing!

What did the Plaintiff do to determine whether Mr. Kahn (or in his Consolidated Financial Statements – the Kahn Entities) owned all other real properties listed in the Financial Statements?  Nothing!  Real property ownership information has always been available.

What did the Plaintiff do to determine the value of real properties stated in Mr. Kahn's financial statements at the relevant times?  Nothing!

The Plaintiff fails to grasp that Mr. Kahn's deteriorating financial condition over the past few years does not prove that any single statement in his financial statements is materially false.  In fact, some experts suggest that substantially all real estate in this country has dropped significantly in value from 2006 – 2008 to 2010.  Most of the country's real estate was able to achieve this result despite not being listed on Mr. Kahn's 2006 – 2008 financial statements.

In sum, over a space of three years, the Plaintiff identifies one immaterial anomaly.  The Plaintiff still cannot identify a single materially false entry on a single financial statement.  The Plaintiff did not conduct a reasonable inquiry into whether one or more of the financial statements contained a materially false statement before alleging this legal contention without any factual backup and on "information and belief". Complaint at ¶¶ 22 and 24.

3.    <u>Plaintiff Failed to Make a Reasonable Inquiry of the 11 U.S.C. §727(a)(2)(A) Claim for Relief.</u>

Plaintiff alleges under Section 727(a)(2)(A) that Mr. Kahn fraudulently transferred property within one year of his filing.  Plaintiff makes no factual allegations before alleging this claim for relief on "information and belief".  Complaint at ¶¶ 26 and 27.

Plaintiff argues it made a reasonable inquiry.  It did not.  First and foremost, Plaintiff triumphantly directs the Court's attention to a Property Profile (Ex. E to Sherrill Dec.) for the proposition that it made a reasonable inquiry into whether Mr. Kahn sold real property within one year of his petition.  In "Exhibit E, page 25" the seller is listed as "Kahn, David J.; The David Kahn Trust".  Any reasonable person would understand that at least one of the sellers is a trust. Most attorneys would know that if a seller is a trust then the signatory for a trust is a trustee.  It is simply unreasonable for an attorney to read:  "Kahn, David J.; The David Kahn Trust" and assume the seller was David Kahn, personally, without further inquiry.

Returning to "Exhibit E, page 25", the line under seller states: "Document # : 2009-0487052."  A reasonable attorney would look at the transfer deed as the attorney has the document number right in front of him or her.  If the Plaintiff would have made a reasonable inquiry it would have discovered the seller is: "David J. Kahn, Trustee of the David Kahn Trust U.D.T. dated October 1, 1990."  The Grant Deed (Document # : 2009-0487052) is attached as Exhibit A to the Reply Declaration of Bernard M. Hansen, filed herewith.

Plaintiff's second line of defense is that its inquiry included talking to a guy who knows a guy who says he knows something.  However, the guy who says he knows something told the other guy to inform the Plaintiff that he is not going to tell the Plaintiff anything.  The one exception is that the guy who knows the guy who says he knows something was told by the guy

6

who says he knows something that he would be willing to talk in return for something the guy who says he knows something wants from the Plaintiff.  The Plaintiff said "no deal" to the guy who knows the guy who is now not going to say anything.  Mr. Kahn will leave it to the sound discretion of the Court to determine the reasonableness of basing any conclusion on such an inquiry.

Next, Plaintiff falls back on the argument that 4 years ago Mr. Kahn owned $69,500,000 in real property and now he lists none in this bankruptcy schedules.  All the Plaintiff needs to do is conduct a property search for each of the properties to determine if the Plaintiff transferred any of them in the year before bankruptcy.  Anything less is an unreasonable inquiry.

Plaintiff's last line is defense is the existence of "suspicious transactions" listed in Mr. Kahn's Statement of Financial Affairs.  "These transfers, coupled with what Bank's counsel later learned from public records searches and conversations with other counsel, contributed to counsel's decision to pursue a section 727(a)(2) claim."  Opposition, p. 5, ll. 7 – 9.  Mr. Kahn submits it is fair to understand this sentence to mean the "suspicious transfers" did not, in and of themselves, give rise to sufficient cause for this claim for relief.  It had to be coupled with the public records search and the "guy who knows a guy who says he knows something, but ain't talking."  As set forth above, a reasonable public records search would have proven the exact opposite of the Plaintiff's belated, factual contention.  The reasonableness of the guy who knows a guy inquiry is nonsense.

D.    Plaintiff Adequately Responds to the Improper Purpose Claim.

Mr. Kahn contends the first action filed by him against the Plaintiff gave it an improper motive for the current adversary proceeding.  Plaintiff responds in two ways – one valid and the other questionable.  First, the Plaintiff is well within its rights to argue that it was investigating Mr.

7

Kahn and would have brought suit regardless of Mr. Kahn's first action against it.    Mr. Kahn grants the Plaintiff this point.

Second, the Plaintiff fails to understand the more it complains about opposing counsel, the more likely it would have been that the Court would have found the Plaintiff's motivation for the filing of a wholly defective complaint was retaliation.

It is necessary to bring out those facts overlooked by the Plaintiff regarding Mr. Kahn's first action against it.

Plaintiff requested and Mr. Kahn agreed to an extension of the last to day to file a nondischargeability complaint.    Mr. Kahn prepared the stipulation and sent it to the Plaintiff.    Mr. Kahn did not request the Plaintiff to return the stipulation.    Mr. Kahn presumed the Plaintiff would submit the stipulation with an order.    It is creditors who want extensions.    It is creditors who process the paperwork so as not to lose their rights.

After signing the stipulation, the Plaintiff contacted Mr. Kahn and requested Mr. Kahn to file the stipulation.    Mr. Kahn did not offer or otherwise suggest this course of action.    Because he was asked, Mr. Kahn filed the stipulation.    Mr. Kahn never, in any way, stated or suggested he would prepare or submit an order.    Mr. Kahn was attempting to extend a professional courtesy. The Plaintiff did not submit an order within the 60 day period.

Despite Plaintiff's protest to the contrary, Mr. Kahn's complaint was more than justified. In order to extend the time to file a complaint objecting to dischargeability of debts under 11 U.S.C. §523(c), Bankruptcy Rule 4004(b) requires a motion to be filed before the end of the 60 day period.    A motion is a request to a court for an order.    A stipulation is merely an agreement between parties.    A stipulation coupled with an order is a "motion".    A stipulation filed alone is not a motion.    Plaintiff failed to file a timely motion.    The same analysis is true of Bankruptcy Rule 4007(c).

Mr. Kahn did not mislead the Plaintiff in any way. It was the Plaintiff who dropped the ball. It was the Plaintiff who did not submit an order that was meant only to protect its rights.

Immediately after filing Mr. Kahn's first action, counsel for Mr. Kahn sent an e-mail to counsel for the Plaintiff on October 15, 2010, as follows:

> Ms. Sherrill:
> I have <u>not</u> served the attached and will not do so until we have communicated.
> Mr. Kahn's dispute is not with your client, but with Cold Smoke.
> I have little doubt that we can resolve this matter. For example, I am willing to let you interview Mr. Kahn for as long as you would reasonably like, either in person or otherwise. I suspect that your client is not going to spend the money chasing Mr. Kahn for fraud, when there has been none. If your client need [sic] information to confirm this, I stand willing and able to assist. Given the posture of litigation with Cold Smoke, I included your client in the complaint. I hope to resolve this matter ASAP and dismiss your client with prejudice.

Not exactly the crime of the century.

The Plaintiff also suggests Mr. Kahn (and his counsel) are "seeking to intimidate anyone willing to take time to examine its assets and prepetition transfers." Opposition at p. 2, ll. 5-6. As Plaintiff is unwilling to take the time to make a reasonable inquiry, it is unclear if Plaintiff is referring to itself or creditors in general.

The undersigned has added to his resume the title of "Intimidator of Financial Institutions and World Wide Law Firms." The undersigned is still pondering whether such accolades merit an increase of $25 an hour for his time.

Plaintiff's counsel expended 6.3 hours preparing this reply. At the old rate of $325, Mr. Kahn has incurred additional fees of $2,047.50. Prior to the addition of future attorney fees to attend the hearing, Mr. Kahn has incurred total fees of $8,775 + $2,047.50 = $10,822.50.

CONCLUSION

Mr. Kahn respectfully requests sanctions of reasonable attorneys' fees in the amount of $10,822.50 against Dan E. Chambers, Esq., Meghan C. Sherrill, Esq., Troutman Sanders LLP and

California Bank & Trust, jointly and severally.  Mr. Kahn further requests sanctions of $50,000 against Troutman Sanders LLP and California Bank & Trust, jointly and severally, to be paid into the Court to deter repetition of their outrageous conduct.


Dated: May 2, 2011                          /s/ Bernard M. Hansen
                                            Bernard M. Hansen,
                                            Attorney for David Kahn


<u>PROOF OF SERVICE THROUGH CM/ECF</u>

I, the undersigned, certify and declare I am a citizen of the United States, over the age of 18 years and not a party to the within action. On May 2, 2011, I served the following document(s):

REPLY IN SUPPORT OF MOTION BY DAVID KAHN FOR SANCTIONS UNDER BANKRUPTCY RULE 9011

REPLY DECLARATION OF BERNARD M. HANSEN IN SUPPORT OF MOTION BY DAVID KAHN FOR SANCTIONS UNDER BANKRUPTCY RULE 9011

on Meghan C. Sherrill, Esq. of TROUTMAN SANDERS LLP through the Court's notice of electronic filing, which included checking the CM/ECF docket for this case and determining that the above-listed persons are on the Electronic Mail Notice List to receive NEF transmissions.

I hereby certify I am a member of the bar of this court.  Executed on May 2, 2011, at San Diego, California.


                                            /s/ Bernard M. Hansen
                                            Bernard M. Hansen