TROUTMAN SANDERS LLP
Dan E. Chambers (State Bar 156853)
Meghan C. Sherrill (State Bar 259487)
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone:   949.622.2700
Facsimile:    949.622.2739
dan.chambers@troutmansanders.com
meghan.sherrill@troutmansanders.com

Attorneys for Creditor
California Bank & Trust as Assignee to the FDIC as
Receiver for Vineyard Bank, N.A.

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re<br><br>David Kahn,<br><br>Debtor. | Case No.  10-12306-PB7<br><br>Chapter 7<br><br>Adversary No. 10-90636-PB |
| CALIFORNIA BANK & TRUST, a California corporation, as Assignee of the Federal Deposit Insurance Corporation as Receiver for Vineyard Bank, N.A.,<br><br>Plaintiff,<br><br>v.<br><br>DAVID JEFFERY KAHN, individually and as trustee of the DAVID J. KAHN TRUST AGREEMENT DATED OCTOBER 1, 1990,<br><br>Defendant. | **FIRST AMENDED COMPLAINT FOR EXCEPTION TO DISCHARGE UNDER 11 U.S.C. § 523 AND OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 727** |

Plaintiff CALIFORNIA BANK & TRUST, a California corporation, as Assignee of the Federal Deposit Insurance Corporation as Receiver for Vineyard Bank, N.A. ("CBT" and/or "Plaintiff"), alleges and complains as follows:

1108772v1                                          - 1 -

FIRST AMENDED COMPLAINT FOR NON-DISCHARGEABILITY AND OBJECTION TO DISCHARGE

## PARTIES

1. At all times relevant hereto, Plaintiff CALIFORNIA BANK & TRUST is and was a corporation organized and existing under the laws of the State of California with its principal place of business in the County of Los Angeles, State of California.

2. CBT is informed and believes, and based thereon alleges, that Defendant DAVID JEFFREY KAHN ("KAHN" or "Defendant")) is, and at all times relevant hereto was, an individual residing in the City of La Jolla, County of San Diego, State of California. CBT is further informed and believes, and based thereon alleges, that KAHN is the trustee of the DAVID KAHN TRUST AGREEMENT DATED OCTOBER 1, 1990 ("TRUST"). In his Schedule B filed in this case, KAHN represented that the TRUST is a revocable trust.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b). This adversary proceeding presents a core proceeding with respect to which the Court may enter a final judgment pursuant to 28 U.S.C. § 157(b)(2)(A), (I) and (O).

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

### The Primary Indebtedness:

5. There exists a certain Promissory Note, dated August 10, 2006, by and between Vineyard Bank, N.A. ("Vineyard Bank") and Tres Hombres, LLC ("Tres Hombres" or "Borrower") ("Note"). A true and correct copy of the Note is attached hereto as Exhibit A and incorporated herein by reference.

6. Under the Note, Tres Hombres promised, *inter alia*, to pay Vineyard Bank the principal sum of $5,222,000.00, plus all unpaid accrued interest, on August 10, 2007. (Ex. A at p. 1.) Tres Hombres further agreed to make monthly payments of all accrued unpaid interest commencing on September 10, 2006 and continuing on the 10th day of each subsequent month. (Ex. A at p. 1.)

7. There also exists a certain Construction Loan Agreement, dated August 10, 2006, by and between Vineyard Bank and Tres Hombres ("Loan Agreement"). A true and correct copy

of the Loan Agreement is attached hereto as Exhibit B and incorporated herein by reference.

8. The Loan Agreement, *inter alia*, requires Tres Hombres to secure payment and performance guarantees, in favor of Vineyard Bank, from David Martz, SEARS, ZACHARY, KAHN, and the TRUST. (Ex. B at p. 5.) These guarantees were successfully obtained and reduced to writing, as further set forth herein.

9. The Loan Agreement expressly states that the following constitutes an event of default under the Loan: "Borrower fails to make any payment when due under the Loan." (Ex. B at p. 7.)

### The Project:

10. Both the Note and Loan Agreement pertain to the construction of retail space at 1940 South Casino Drive, Laughlin, Nevada ("Project").

11. Tres Hombres pledged the Project as security for the loan, and Vineyard Bank caused a Construction Deed of Trust to be recorded in the County of Clark, State of Nevada on August 31, 2006.

### The Guaranties:

12. On or about August 10, 2006, in order to induce Vineyard to make the Loan to Tres Hombres, David Martz, Timothy Sears, David Zachary, KAHN, and the TRUST (collectively "Guarantors") each executed a Commercial Guaranty in favor of Vineyard Bank (each a "Guaranty" and, collectively, the "Guaranties"). True and correct copies of the KAHN and TRUST Guaranties are attached hereto as Exhibits C and D, respectively, and incorporated herein by reference.

13. Under the terms of the Guaranties, KAHN:

(a) "absolutely and unconditionally guaranteed full and punctual payment and satisfaction of the indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the related documents" (Exs. C and D at p. 1.)

(b) unconditionally guaranteed and promised to fulfill on demand, in the event of Tres Hombres' default on any of the obligations owing to Plaintiff, all such obligations (Exs. C and D, at p. 1.); and

(c) waived all available guarantor and suretyship defenses to enforcement of their individual obligations to repay Tres Hombres' debt, all as set forth in the guarantees (Exs. C and D, at p. 2.)

**Financial Statements and Maturity Extensions**

14. In or about June 2006, KAHN, among others, provided Vineyard with a financial statement ("2006 Financial Statement"), purportedly detailing all of KAHN's assets and liabilities, in order to induce Vineyard to make the Loan to Tres Hombres. A true and correct copy of the 2006 Financial Statement is attached hereto as Exhibit E.

15. The original maturity date on the Loan was August 10, 2007. At or about that time, Vineyard and Tres Hombres executed a Change in Terms Agreement that extended the maturity date on the loan to February 10, 2008. A true and correct copy of the August 2007 Change in Terms Agreement is attached hereto as Exhibit F.

16. In or about July of 2007, KAHN provided Vineyard with a financial statement ("2007 Financial Statement"), purportedly detailing all of KAHN's assets and liabilities at that time, in order to induce Vineyard to extend the maturity date on the Loan and execute the August 2007 Change in Terms Agreement. A true and correct copy of the 2007 Financial Statement is attached hereto as Exhibit G.

17. In or about February of 2008, Vineyard and Tres Hombres executed a second Change in Terms Agreement that again extended the maturity date on the Loan, this time to May 10, 2008. A true and correct copy of the February 2008 Change in Terms Agreement is attached hereto as Exhibit H.

18. In or about January of 2008, KAHN provided Vineyard with a financial statement ("2008 Financial Statement"), purportedly detailing all of KAHN's assets and liabilities at that time, in order to induce Vineyard to extend the maturity date on the Loan and execute the February 2008 Change in Terms Agreement. A true and correct copy of the 2008 Financial Statement is attached hereto as Exhibit I.

19. Vineyard and Tres Hombres subsequently entered in to two more Change in Terms Agreements, extending the final maturity date on the Loan to February 10, 2009.

**Borrower Default**:

20. Tres Hombres failed to make the interest payment due under the Note and the Loan on November 10, 2008; failed to make interests payments on the 10th of every subsequent month; and failed to pay all outstanding principal and interest when the Note and the Loan matured. Likewise, David Martz, Timothy Sears, David Zachary, KAHN, and the TRUST failed to make these payments.

21. On December 31, 2008, Vineyard Bank provided KAHN with written notice of Tres Hombres' default. A true and correct copy of the letter is attached hereto as Exhibit J and incorporated herein by reference.

22. Despite receipt of the notice of default, Tres Hombres, David Martz, Timothy Sears, David Zachary, KAHN and the TRUST still failed to cure the payment default. Accordingly, on January 27, 2009, Vineyard Bank caused a Notice of Default to be recorded in the County of Clark, State of Nevada. Thereafter, a trustee's sale was duly noticed, and the Project was sold on June 26, 2009, via trustee's sale to Vineyard Bank for $621,000.00.

23. On October 12, 2009, CBT initiated an action against KAHN and the other Guarantors in the Superior Court for the State of California, County of San Diego, Case No. 37-2009-00097240-CU-BC-CTL.

24. On July 13, 2010 ("Petition Date"), Defendant filed a voluntary chapter 7 petition, commencing the above-captioned bankruptcy case.

**CBT's Asset Acquisition and Assignment**

25. On July 17, 2009, Vineyard Bank was closed by the Office of the Comptroller of the Currency ("OCC"). Pursuant to federal law, the OCC assigned all assets and liabilities of Vineyard Bank to the Federal Deposit Insurance Corporation (the "FDIC") as receiver. Also on July 17, 2009, the FDIC, as receiver of Vineyard Bank, entered into a Purchase and Assumption Agreement with CBT whereby CBT was assigned all right, title, and interest in the Note, the Loan, and the Guaranties. Thus, CBT brings this action in its capacity as assignee of the Federal Deposit Insurance Corporation as receiver for Vineyard Bank.

**Defendant's Pre-Petition Transfers**

1108772v1

- 5 -

FIRST AMENDED COMPLAINT FOR NON-DISCHARGEABILITY AND OBJECTION TO DISCHARGE

26. Plaintiff is informed and believes that on or about July 15, 2009, KAHN, either in his individual capacity or in his capacity as trustee of the TRUST, transferred a real property located at 2003 Olite Court La Jolla, CA 92037 for approximately $1,415,000, and recorded a Grant Deed reflecting such transfer on or about August 31, 2009.

27. Plaintiff is informed and believes that on or about November 10, 2009, KAHN executed a quitclaim deed to a property located at 5550 Warbler Way, La Jolla, CA 92037 transferring the property to Sunset View Properties, LLC, an entity that KAHN, either directly or through another entity or entities, is believed to have a significant ownership interest in.

**Contents of KAHN's Financial Statements and Representations in his Schedules**

28. The 2006 Financial Statement represents that KAHN had $2,090,000 in cash. It also represents that KAHN owned six real properties which had a combined estimated value of $69,500,000, and combined liabilities of $22,900,000, for a net worth of $46,600,000.

29. In the 2007 Financial Statement, KAHN represented that he had $1,770,000 in cash. KAHN also represented that he owned 51% of the stock in Midway Resources, Inc., which he valued at $2,500,000, and that he owned stock in KCM MC LLC (Media Cart Holding, Inc.), which he valued at $26,453,700. KAHN also represented that he owned nine pieces of real property, with a total net value of $28,105,800.

30. In the 2008 Financial Statement, KAHN represented that he had $1,817,923 in cash. In this statement, KAHN again represented that he owned 51% of the stock in Midway Resources, valued at $2,500,000 and an interest in stock in Media Cart Holdings, Inc. that KAHN valued at $27,000,000. KAHN also represented that he owned a 10% interest in All-Star Apparel, Inc., which he valued at $2,000,000. KAHN also represented that he owned five pieces of real property with a total net value of $12,216,320.

31. On the Petition Date, KAHN filed his Schedule A, representing that he owns absolutely no real property. KAHN's Schedule B states that KAHN has $50 cash on hand and $50 in a checking account at Bank of America. Schedule B also lists a number of entities KAHN owns an interest in, but does not list any ownership interest in Sunset View Properties, LLC.

///

32. In his Schedule B, KAHN represents that he holds a 52.9% ownership in Midway Resources, LLC, with a current value of $0.00.

33. In his Statement of Financial Affairs, also filed with this Court on the Petition Date, KAHN was asked to list all property transfers, other than property transferred in the ordinary course of business or financial affairs of the debtor, within two years prior to the Petition Date. KAHN listed that he transferred his 10% interest in All-Star Apparel, and 20% profit participation is its profits in return for cancellation of a $500,000 owed to All-Star Apparel by Kahn Capital, Inc.

34. KAHN does not list on his Statement of Financial Affairs the July 2009 transfer of the real property at 2003 Olite Court or the November 2009 transfer of the real property at 5550 Warbler Way.

35. On March 21, 2011, KAHN executed a declaration ("Kahn Declaration), filed with the Court in the main bankruptcy case in conjunction with the Chapter 7 Trustee's Motion to Approve Settlement with the Debtor, Docket No. 100. A true and correct copy of the Kahn Declaration, without exhibits, is attached hereto as Exhibit K.

36. In the Kahn Declaration, KAHN went to great lengths to convince the Court that Media Cart Holdings, Inc. stock is not worth much, and certainly less than the $1,500,000 in debt that was cancelled in exchange for KAHN's transfer of the stock. KAHN represented that as of January 2009, shares in Media Cart Holdings, Inc. were worth less than $1.08 per share. KAHN also represented that "[i]n 2007 thru 2009, on multiple occasions [KAHN entities] . . . loaned funds to Media Cart Holdings, Inc. and David Brice to enable them to make payroll, meet obligations and keep the doors open."

## FIRST CLAIM FOR RELIEF

### (Exception to Discharge under 11 U.S.C. § 523(a)(2))

37. Plaintiff incorporates by reference the foregoing paragraphs 1 through 36, inclusive, as though set forth in full.

/ / /

/ / /

38. Plaintiff is informed and believes that Defendant provided one or more written statements to Vineyard regarding his financial condition in connection with Loan that was or were materially false.

39. Specifically, Plaintiff is informed and believes that, among other things, the 2007 Financial Statement and 2008 Financial Statement claim stock interests with assigned values that are grossly inflated and inaccurate. In both statements, KAHN represented that the value of the stock in KCM LM LLC / Media Cart Holdings, Inc. was approximately $27,000,000.

40. As stated above, in the Kahn Declaration, KAHN stated that during those same times, the company was having severe financial trouble and was "on the brink of bankruptcy multiple times." Despite having represented in the 2007 Financial Statement that Media Cart Holdings, Inc. preferred stock and common stock was worth $52.75 per share and $26.38 per share, respectively, the Kahn Declaration states that only one and a half years later, "the price of $1.08 [per share] far exceeded the value of Media Cart Holdings, Inc. stock."

41. The 2007 Financial Statement and the 2008 Financial Statement also contain representations that KAHN's 51% interest in Midway Resources, Inc. was worth $2,500,000. Now, in his Schedule B, KAHN claims that his 52.9% interest in Midway Resources, Inc. is worth nothing.

42. In the 2008 Financial Statement, KAHN represented that his 10% interest in All-Star Apparel was worth $2,000,000. In his Statement of Financial Affairs, number 10, KAHN represents that he sold the same stock, just over one year later, for a $500,000 cancellation of debt.

43. Plaintiff is informed and believes that KAHN grossly inflated the value of all of its stock holdings in both the 2007 Financial Statement and the 2008 Financial Statement in order to mislead Vineyard and to induce Vineyard to extend the maturity date on the Loan.

44. Vineyard reasonably relied on such written statements in extending and/or modifying the Loan.

45. Plaintiff is informed and believes that Debtor made or caused the statement or statements to be published with the intent to deceive Vineyard.

## SECOND CLAIM FOR RELIEF

### (Objection to Discharge under 11 U.S.C. § 727(a)(2)(A))

46.     Plaintiff incorporates by reference the foregoing paragraphs 1 through 45, inclusive, as though set forth in full.

47.     Plaintiff is informed and believes that Defendant, with intent to hinder, delay or defraud his creditors, transferred and/or concealed, or permitted to be transferred or concealed, property of Defendant.

48.     Plaintiff is informed and believes that such transfers and/or concealment of Defendant's property were made within one year prior to the Petition Date of July 13, 2010.

49.     Specifically, Plaintiff is informed and believes that KAHN, either individually or as trustee of the TRUST, sold the real property located at 2003 Olite Ct., La Jolla, CA 92037 to Douglas Miller and Kathryn Miller for $1,415,000 in or about July of 2009, and said transfer was recorded in or about August of 2009 in San Diego County. A true and correct copy of the Grant Deed reflecting such transfer is attached hereto as Exhibit L.

50.     Additionally, Plaintiff is informed and believes that KAHN, either individually or as trustee of the TRUST, transferred the real property located at 5550 Warbler Way, La Jolla, CA by way of a Quitclaim Deed to Sunset View Properties, LLC, recorded November 13, 2009 in San Diego County. A true and correct copy of the Quitclaim Deed is attached hereto as Exhibit M.

51.     Neither of these real property transfers was listed in number 10 on KAHN's Statement of Financial Affairs, nor were they revealed by KAHN, to Plaintiff's knowledge, in any pleading or document filed with the Court in the main bankruptcy case or in this adversary case.

52.     In addition, Plaintiff is informed and believes that KAHN, either directly or through another entity or entities, holds a substantial ownership interest in Sunset View Properties, LLC.

53.     Plaintiff is informed and believes that KAHN transferred the Warbler Way property in November 2009 for no value in order to hide the asset from creditors, and then

1108772v1                                      - 9 -

FIRST AMENDED COMPLAINT FOR NON-DISCHARGEABILITY AND OBJECTION TO DISCHARGE

intentionally failed to list any information regarding that transfer or his interest in Sunset View Properties, LLC on his Schedules and Statement of Affairs.

### THIRD CLAIM FOR RELIEF

### (Objection to Discharge under 11 U.S.C. § 727(a)(5))

54. Plaintiff incorporates by reference the foregoing paragraphs 1 through 53, inclusive, as though set forth in full.

55. In Defendant's Schedule B, filed with this Court on July 13, 2010, Defendant claims to have only $50 cash on hand and $50 in a checking account at Bank of America. Defendant does not list any other cash assets on his schedules.

56. Plaintiff is informed and believes that Defendant, among other things, sold real property within one year prior to the Petition Date, and pursuant to such sales, Defendant received substantial amounts of money.

57. Specifically, Plaintiff is informed and believes that KAHN, either individually or as trustee of the TRUST, sold the real property located at 2003 Olite Ct., La Jolla, CA 92037 Douglas Miller and Kathryn Miller for $1,415,000 in or about July of 2009, and said transfer was recorded in or about August of 2009 in San Diego County.

58. In addition, KAHN represented on his 2008 Financial Statement that as of January 2008, he had $1,817,923 in cash and was owed $2,152,00 in receivables.

59. Defendant has failed to account for these sums of money, or explain satisfactorily any loss of these assets.

### PRAYER

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

1. A determination that Defendant is not entitled to a discharge of its obligations to Plaintiff pursuant to 11 U.S.C. § 523(a)(2);

2. A determination that Defendant is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2)(A);

3. A determination that Defendant is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(5);

1108772v1                                                    - 10 -

4. For an award of reasonable attorney's fees in an amount to be proven at trial;

5. For costs of suit incurred herein;

6. For such other and further relief as the Court deems just and proper.

Dated: May 6, 2011                                TROUTMAN SANDERS LLP


By: /s/ Meghan C. Sherrill
   Dan E. Chambers
   Meghan C. Sherrill
   Attorneys for Creditor California Bank & Trust as Assignee to the FDIC as Receiver for Vineyard Bank, N.A.

1108772v1

- 11 -

FIRST AMENDED COMPLAINT FOR NON-DISCHARGEABILITY AND OBJECTION TO DISCHARGE